IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CELLULAR DYNAMICS
INTERNATIONAL, INC. and WISCONSIN
ALUMNI RESEARCH FOUNDATION,

        Plaintiffs,

v.

LONZA WALKERSVILLE, INC.,

        Defendant.

OPINION AND
ORDER

17-cv-0027-slc

---

Before the court is the motion of defendant Lonza Walkersville, Inc. to transfer this case to the United States District Court of Maryland on the ground that venue is not proper in this district. Dkt. 30. For the reasons discussed below, I am granting this motion.

BACKGROUND

This is a patent infringement action involving stem cell technology. On January 12, 2017, plaintiffs Cellular Dynamics International, Inc. ("CDI") and Wisconsin Alumni Research Foundation ("WARF") sued Lonza Walkersville, Inc., for patent infringement, alleging that Lonza had developed and sold induced pluripotent stem cells ("iPSCs"), as well as a platform (known as the "Lonza Kit") for generating stem cells, that directly or indirectly infringed upon five CDI patents and two WARF patents licensed to CDI.

Defendant Lonza Walkersville is a Delaware corporation with its principal place of business in Walkersville, Maryland. The patent venue statute, 28 U.S.C. § 1400(b), provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular

and established place of business." Under controlling law at the time plaintiffs filed suit, for purposes of § 1400(b) a corporation was "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990). However, on May 22, 2017, the United States Supreme Court overruled *VE Holding* and significantly narrowed the reach of the venue statute, finding that the term "reside" as used in the patent venue statute "refers only to the State of incorporation." *Id.* at 1520 (citing In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957)). This means that venue no longer can be established in a patent case involving a non-resident corporate defendant merely by showing that the defendant is subject to personal jurisdiction. Instead, venue is proper only "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *Fourco*, 353 U.S. at 226.

Two days after *TC Heartland* was decided, defendant filed the instant motion pursuant to 28 U.S.C. § 1406, arguing that venue is no longer proper in this district and asking the court to transfer this case to the United States District Court for the District of Maryland. Dkt. 30.[1] In support, defendant cited to declarations filed by Dr. Thomas Fellner, Lonza Walkersville's Head of Commercial Development of Cell Therapy, in which he averred that:

---

[1] Defendant had filed a similar motion on March 3, 2017, dkt. 7, asking that the case be transferred to the District of Delaware, where a mirror-image action filed by defendant against CDI and WARF was pending. This court ruled that it would defer to the District of Delaware to decide whether to apply the first-to-file rule and rule on a similar transfer motion filed by defendant CDI in the case before it. Dkt. 23. The Delaware court, in turn, deferred a decision on the venue question until the Supreme Court decided *TC Heartland*. Dkt. 28. Soon after *TC Heartland* was decided, defendant voluntarily dismissed its Delaware lawsuit against plaintiffs. In its current motion to transfer, defendant argues for transfer to the District of Maryland, asserting that the Delaware court is facing a shortage of judges, the effects of which are likely to be exacerbated by the fallout from *TC Heartland*.

2

- Lonza Walkersville was incorporated in Delaware in 1991, and its principal place of business is in Walkersville, Maryland;

- Lonza Walkersville is not registered to do business in Wisconsin and has no regular or established place of business in Wisconsin;

- Lonza Walkersville neither owns nor leases any real estate or other property in Wisconsin, and it has no telephone listings or bank accounts in Wisconsin;

- Lonza Walkersville has no regular employees, agents or distributors that reside in Wisconsin;

- Lonza Walkersville has no offices, no retail outlets, and no distribution centers, order centers or manufacturing facilities in Wisconsin;

- Lonza Walkersville has never had any employees, representatives or agents in Wisconsin at any time;

- Lonza Walkersville does not maintain any inventory in Wisconsin;

- Products bought from Lonza Walkersville are shipped directly from its facility in Walkersville, Maryland to the customer;

- Lonza Walkersville does not have any additional warehouses or facilities in which its products are stored prior to shipment in Wisconsin; and

- There is no long-standing, automatically renewing contract between the University of Wisconsin and Lonza Walkersville.

Dkts. 9, 26. 37.

Fellner's declarations appeared to refute decisively any claim that defendant has a "regular and established place of business" in this district, but plaintiffs called defendant's due diligence into question when plaintiffs produced a document that appeared to contradict

Fellner's denial that defendant had any long-standing contract with the University of Wisconsin. *See* dkts. 39-40. Accordingly, on June 20, 2017, I granted plaintiffs' request to conduct expedited discovery on venue, but limited it to "some very minimal discovery basically to prove up the due diligence either of Dr. Fellner or a 30(b)(6) representative." Dkt. 41, 42. Specifically, I ordered defendant to respond to plaintiffs' First Set of Requests for Production, Numbers 1-3 and 7, and to "maybe have somebody sit for a two-hour deposition basically to confirm that due diligence was exercised and there is no permanent and continuous presence . . . by Lonza Walkersville, in Wisconsin." Tr. of Mot. Hrg., dkt. 42, at 6. I further advised the parties that "when I say 'very minimal,' I mean it." *Id*.

Defendant responded to plaintiffs' document requests on July 21, 2017. Although it found no responsive documents to Requests Nos 1, 2 and 3, defendant produced 90 documents derived from a search of employee records and defendant's contract database. Dkt. 46. Defendant's responses confirmed that: (1) Lonza Walkersville has no employees who reside or work in Wisconsin; and (2) Lonza Walkersville does not maintain any inventory or property in Wisconsin, nor has it done so in the past. Dkt. 55-1. In addition, plaintiffs deposed Dr. Fellner for four hours on July 25, 2017, on a number of topics. Dkt. 45. Dr. Fellner was not designated to testify about defendant's document retention policy or the steps taken by defendant to collect and produce documents in response to plaintiffs' document requests. Dkt. 45, at 11-12; Dkt. 55-2.

After Dr. Fellner's deposition, plaintiffs complained that he was unprepared and that defendant's document production was inadequate, and indicated a desire to conduct further discovery. Dkt. 45, at 143-44; dkt. 46. On July 28, 2017, this court rejected any further

4

attempts by plaintiffs to take discovery and ordered briefing on the motion to transfer to proceed. Dkt. 49.

Briefing is now complete and the motion to transfer is under advisal to the court. Although plaintiffs argue otherwise, I am convinced the discovery they received was adequate, that Fellner's declarations are sufficiently reliable and credible to be accepted by the court, and that the record is developed sufficiently to decide the motion. Although Dr. Fellner was not the most knowledgeable 30(b)(6) witness, he testified that the facts in his declarations were supported by conversations he had with defendant's in-house counsel, internal sales staff and the company controller, and from reviewing documents that had been collected by in-house counsel. Dkt. 45, at 145-150. This is enough to "prove up" defendant's due diligence, which is the reason I authorized the discovery in the first place. Further, plaintiffs have not identified any facts or evidence to suggest that defendant is hiding the ball. Against that backdrop, I find the following facts, solely for the purpose of deciding the motion to transfer:

FACTS

Lonza Walkersville is a Delaware corporation with its principal place of business in Walkersville, Maryland. It is not registered to do business in Wisconsin. It does not own or lease any real estate or other property in Wisconsin; it has no offices, retail outlets, distribution centers, order centers or manufacturing facilities in Wisconsin; and has no telephone listings or

bank accounts in Wisconsin.² Its website, listing all of its North American locations, has two locations listed for Lonza Walkersville, both of which are in Maryland.

All Lonza Walkersville products are manufactured in Walkersville. Lonza Walkersville does not maintain any inventory in Wisconsin and has no storage facilities or warehouses in Wisconsin or contracts with local distributors in Wisconsin. Products bought from Lonza Walkersville are shipped directly from the facility in Walkersville, MD to the customer via commercial carrier.

Lonza Walkersville has no employees, representatives, agents or distributors who live in Wisconsin.³ None of its sales representatives live in Wisconsin or are devoted exclusively to

---

² Plaintiffs attempt to link Lonza Walkersville to its parent company, Lonza AG, and to a local support office warehouse formerly owned by Arch Chemicals. Br. in Opp., dkt. 53, at 6. As defendant points out, however, Arch Chemicals is a separate corporation that is only connected to Lonza Walkersville by having the same parent company; moreover, Arch Chemicals is located in Jackson, Wisconsin, which is in the Eastern District of Wisconsin. Accordingly, the Arch Chemicals warehouse is irrelevant.

³ Plaintiffs argue that the relevant time period for analyzing venue begins when its cause of action accrued, which they say was on May 22, 2012, which is the first date of issuance for the patents in suit. Dkt. 53, at 11. Plaintiffs point out that Dr. Fellner testified that he had personal knowledge regarding defendant's present state of affairs but not the past; plaintiffs imply that this leaves the record undeveloped on this point. Fellner Dep., dkt. 45, at 40:2-41:2. Defendant has not responded to these assertions.
    A more robust record would have been helpful, and defendant should have done a better job of dotting the "i"s and crossing the "t"s, but in light of the evidence actually adduced so far, there is no genuine need to delve more deeply. Plaintiffs have not pointed to any evidence to suggest that there is any reason to believe that defendant had employees located on a regular and continuous basis in Wisconsin in the past five years. It appears that Lonza does not conduct a substantial amount of business in the state that would justify a local sales force. *See* Carly Dec., dkt. 22, ¶14, exh. 12 (indicating that in the five years from January 1, 2012 to December 31, 2016, Lonza's sales to the UW amounted to approximately $200,000). Moreover, defendant indicated that it did not maintain any inventory or property in Wisconsin in the past, Def.'s Responses to First Set of Requests for Production, dkt. 55-1, and it explained that orders are filled in Walkersville. Even if I were to assume, *arguendo*, that there might have been Lonza employees who lived in Wisconsin at some point in the past five years, the other facts in the record defeat any suggestion that their activities constituted a regular and established place of business.

selling Lonza Walkersville products in Wisconsin. It has one sales representative, Melissa King, who visits Wisconsin three days a month to perform demonstrations of Lonza Walkersville products, but she does not take order requests. All of those requests are sent to the order desk, which is located in Lonza Walkersville's facility in Walkersville, MD.

Lonza Walkersville sold the accused Lonza Kits to Wisconsin companies, including the University of Wisconsin. Since at least 2010, Lonza Walkersville has had a contract with the University of Wisconsin to supply it with laboratory equipment and related supplies.[4] Although the bid sheet for the contract has a provision that requires Lonza Walkersville to perform onsite repair within three days under certain circumstances, Lonza Walkersville has not performed any on-site repairs in Wisconsin for at least the last four years.

Lonza Walkersville's 2010 and 2014 contracts with the University of Wisconsin for the supply of laboratory equipment, related supplies, and maintenance, contain a choice of law provision, applying Wisconsin law, and a forum selection clause, requiring that "any disputes under this Agreement shall be in Dane County, Wisconsin." Dkt. 40-1, ¶13.0. In its response to the University's request for bids in 2014, defendant checked a box indicating that it agreed to extend the contract to "Non-Profit Organizations specifically linked by their mission to the University of Wisconsin." *Id.*, at 24.

---

[4] Plaintiffs point to two other contracts between defendant and entities in this district, but neither advances the venue analysis. The first is a contract with Promega Corporation, but it involves Lonza Cologne GmbH, not Lonza Walkersville. Dkt. 53, at 7; Dkt. 55-14. The second is a Master Supply Agreement with Pfizer, Inc. It involves potential sales to more than 150 Pfizer sites worldwide, one of which is located in Wisconsin. Dkt. 53, at 7; Dkt. 55-6 at 1.6; Dkt. 55-7. There is no evidence that defendant sold products to Pfizer in Wisconsin, and even if it did, such sales alone would fail to show that defendant had a regular and established place of business in this district.

Lonza Walkersville has relationships with Wisconsin companies and the University of Wisconsin for research and development purposes and for quality control testing, and has licensed patents from WARF for Lonza's own research.

OPINION

I. DEFENDANT DOES NOT HAVE A REGULAR AND
ESTABLISHED PLACE OF BUSINESS IN THIS DISTRICT

As noted previously, venue in patent infringement actions is controlled exclusively by 28 U.S.C. § 1400(b). This statute provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

For purposes of section 1400(b), the residence of a corporation is its place of incorporation. *TC Heartland*, 137 S. Ct. at 1517. Lonza Walkersville is a Delaware corporation and thus does not "reside" in the Western District of Wisconsin for venue purposes. Venue will lie in this district, therefore, only if defendant has committed acts of infringement here and has a regular and established place of business in this district. It is unnecessary to decide whether the complaint sufficiently alleges that defendant has committed acts of infringement in this district because defendant does not have a regular and established place of business here.

28 U.S.C. § 1400(b) does not define what is meant by the term "regular and established place of business." The sole case from the Federal Circuit addressing the subject is *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985), a case that originated in the District of Minnesota. Cordis, a company that sold cardiac pacemakers, was a Florida corporation with its principal

place of business in Florida. Cordis employed two full-time sales representatives who maintained offices in their homes in Minnesota. *Id*. at 735. The employees stored Cordis literature, documents and products in their homes, completed their paperwork and other administrative tasks there and claimed income tax deductions for their home offices. *Id*. One sales rep had approximately $30,000 of Cordis products in his home office while the other rep had approximately $60,000 worth, and hospitals or physicians could obtain pacemakers directly from this inventory. *Id*. Further, Cordis engaged a secretarial service in Minnesota to help the employees with their work; calls made to the number provided by the employees on their business cards were answered by the service as "Cordis Corporation." *Id*. Finally, the employees were often present in the operating room during implantation of Cordis pacemakers, where they provided technical product information and post-implantation consultations. *Id*.

After the district court denied Cordis's motion to dismiss for improper venue, Cordis petitioned the Federal Circuit Court of Appeals for a writ of mandamus. Cordis argued that the fact that it did not rent or own a fixed physical location within Minnesota absolutely precluded a finding that it had a regular and established place of business as required by § 1400(b). After reviewing two cases cited by Cordis, the appellate court disagreed, finding that

> [t]hese cases indicate that in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not . . . whether it has a fixed physical presence in the sense of a formal office or store.

*Id*. at 737. Thus, because "a rational and substantial legal argument" could be made in support of the district court's order finding venue proper in Minnesota, the court declined to issue the writ. *Id*.

9

Because *Cordis* was decided on such narrow grounds, it offers limited guidance on how courts are to determine whether a defendant has a "regular and established place of business" in a district. Lower courts grappling with this question have failed to agree on a definitive test. *See Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896, at *11 (E.D. Tex. June 29, 2017)(noting that courts before and after *Cordis* failed to take a uniform approach); *Hemstreet v. Caere Corp.*, 1990 WL 77920, at *2 (N.D. Ill. June 6, 1990) ("Exactly what factors and the weight to be given the various factors concerning a defendant corporation's activities within the district has been the subject of diverse judicial opinions which often reach opposite conclusions on nearly identical facts."); *MAGICorp. v. Kinetic Presentations, Inc.*, 718 F. Supp. 334, 340 (D.N.J. 1989) ("courts and commentators alike are clear that there is no definitive formula for assessing whether the defendant has 'a regular and established place of business' in the district"); *Lace v. Lace*, 1989 WL 103364, *3 (N.D. Ill. 1989) (describing case law as "jumbled and irreconcilable"). Two guideposts are clear, however:

First, the "regular and established place of business" requirement contemplates something more than minimum contacts or simply doing business in a particular district. *Knapp-Monarch Co. v. Casco Products Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) (company's "many varied contacts" in the state failed to demonstrate that company had a "regular and established place of business" within the state, although they indicated that company was "doing business" in the state as that term was contained in the general venue statute); *Kinetic Instruments v. Lares*, 802 F. Supp. 976, 987 (S.D.N.Y. 1992) (having a regular and established place of business involves more than "doing business" in forum district); *MAGICorp.*, 718 F. Supp. at 340 ("This prong of the venue test, however, requires greater contacts than were necessary under the 'doing business' test

formerly articulated in the generic venue statute."); *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 962 (D. Mass. 1987) (regular and established place of business standard requires more than minimum contacts necessary for establishing personal jurisdiction). Second, the focus of the inquiry must be on whether the defendant conducts its business in the district through a "permanent and continuous presence," not on whether it has a "fixed physical presence in the sense of a formal office or store." *Cordis*, 769 F.2d at 737; *Lace*, 1989 WL 103364, *3.[5]

Keeping these guideposts in mind, I find that defendant does not have a sufficient "permanent and continuous" corporate "presence" in this district to support a finding of proper venue under § 1400(b). Most significantly, Lonza Walkersville has no permanent or continuous physical presence in Wisconsin, not real estate, not people, not inventory. Lonza Walkerville does have sales managers who visit and solicit customers in Wisconsin (as well as many other states), but none of them lives in this district or maintains any product or inventory here.

Plaintiffs insist that the "regular and established place of business" test does not demand that defendant's sales reps *live* in Wisconsin, so long as they work here. That may be true, *if* the defendant maintains some sort of office or location from which the employees work on a regular basis. However, I have not located any case in which the court found a regular and continuous presence based on the fact that an employee commuted in and out of the district. Rather, in each of the cases in which a sales employee's activities in a forum were found to be sufficient to establish venue, the employee's residence functioned effectively as a satellite corporate office.

---

[5] Plaintiffs ask the court to adopt the four-part framework recently developed by the United States District Court for the Eastern District of Texas for assessing whether a defendant has a regular and established place of business in a district. *See Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896, at *11-*13 (E.D. Tex. June 29, 2017) (identifying relevant factors as defendant's (1) physical presence; (2) representations; (3) benefits received; and (4) targeted interactions with the district.) Although I think this test is incorrect, applying it here would not change the result.

*See, e.g., Cordis*, 769 F.2d at 735; *Brunswick Corp. v. Suzuki Motor Co.*, 575 F. Supp. 1412, 1424 (E.D. Wis. 1983) (venue proper where corporation's employees owned or rented homes in district and worked out of their homes); CPG *Prod. Corp. v. Mego Corp.*, No. C-1-79-582, 1980 WL 50358, at *1 (S.D. Ohio Aug. 21, 1980) (defendant employed one sales agent who lived in district and used home as a base for his sales operations); *Shelter-Lite, Inc. v. Reeves Bros.*, 356 F. Supp. 189, 191 (N.D. Ohio 1973) (same).

In any event, this discussion is academic because there is no evidence that defendant has any employees who work regularly and continuously in Wisconsin. Only one sales rep–Melissa King– visits Wisconsin with any regularity; she visits Wisconsin three days a month to perform demonstrations of Lonza Walkersville products. However, she does not live, office or maintain any inventory in Wisconsin, nor does she fulfill customer orders in Wisconsin. Product orders are sent to Lonza Walkersville's facility in Walkersville, MD, where they are filled, and then shipped to the customer via commercial carrier. King's thrice-monthly sales calls to Wisconsin are a far cry from the facts in *Cordis*, and amount to nothing more than defendant "doing business" in Wisconsin. They are not sufficient in quantity or quality to support a finding that defendant has a "permanent and continuous presence" here. *Cf. Hemstreet*, 1990 WL 77920, at *4 (finding venue proper where defendant maintained office in district from which its district manager worked; manager received customer calls there for the placement of orders and maintained demonstration equipment there); *Lace*, 1989 WL 103364, at *3 (venue not proper in Illinois even though salesperson for California corporation lived in district, kept some parts with him to take on sales calls and solicited $2.5 million annual business for defendant, because

defendant's customers "must look to California for approval of their order, shipment, repairs and other assistance.").

Plaintiffs also make much of the fact that defendant offers service plans for its products and devices, which include regular on-site preventative maintenance, in addition to as-needed on-site repair by Lonza engineers. Absent any evidence that defendant maintains a location in this district where it houses inventory or service employees, however, it is difficult to see the relevance of service obligations to the venue analysis. Providing service is not the same as maintaining a "place of business." In any case, there is no evidence as to how often such repairs are needed, whether any Wisconsin entities own the products for which the service plans are offered or applicable or that any of defendant's employees are in Wisconsin on a regular and continuous basis to fulfill these obligations. Neither sporadic, as-needed service calls nor periodic maintenance visits amount to a "permanent and continuous presence."

Lacking any evidence that Lonza Walkersville maintains any sort of regular place of business in this district, or even that Lonza represents that it does, plaintiffs attempt to construct a corporate "presence" by pointing out that Lonza Walkersville has at times exchanged confidential information and collaborated with the University of Wisconsin for research purposes, and that it uses a Wisconsin company to perform quality testing of its products. Again, however, the question is not merely whether Lonza Walkersville has been "present" in Wisconsin or has some connections to it, but whether it maintains a "regular and established" *place* of business in this district. That Lonza Walkersville hires other companies or works with researchers in Wisconsin fails to establish that it maintains what amounts to a regular place of business in the state.

In sum, the record does not support a finding that defendant maintains a regular and established place of business in this district. To find that venue is appropriate in this case would be akin to acting as if *TC Heartland* was never decided, in that it would permit a court to find venue based on the same facts that, pre-*TC Heartland*, the courts used to exercise personal jurisdiction over a non-resident corporation. The test for venue now requires more. That "more" is not present in this case.

## II. DEFENDANT DID NOT WAIVE VENUE

As a fallback, plaintiffs argue that defendant waived its right to object to venue when it agreed to sell laboratory supplies and equipment to the University of Wisconsin. Plaintiffs point out that the supply agreement between the UW and Lonza Walkersville contains a forum selection clause which specifies Dane County, Wisconsin as the location for resolving any disputes "arising under this agreement." Plaintiffs argue that the instant patent infringement suit "arises under" the supply agreement because Lonza sold the accused Lonza Kits to the UW under its supply agreement with the UW. According to plaintiffs, their claims of indirect infringement related to the Lonza Kits will require construction of the Lonza-UW agreement, and therefore "the instant action is a dispute under the Lonza-UW agreement, to which the forum selection clause would apply." Br. in Opp., dkt. 53, at 28. Further, argue plaintiffs, WARF is a third-party beneficiary of the contract because defendant checked a box indicating that it agreed to extend the contract to other "Non-Profit Organizations specifically linked by their mission to the University of Wisconsin Madison," of which WARF is one.

14

This argument is too much of a stretch. Plaintiffs fail to explain why the Lonza-UW sales agreement has anything to do with this patent infringement action or why it would need to be construed. The purpose of the agreement between Lonza and the UW was to "request[] bids for the purchase of Laboratory Equipment, Related Supplies and Maintenance Agreements." Dkt. 40-1, § 2.1. It is a supply contract. Plaintiffs fail to demonstrate how that agreement is related to this case other than that it was the means by which the accused Lonza Kits arrived in the hands of a third party. Even if WARF could somehow be deemed a third-party beneficiary of the contract (which has not been adequately shown), plaintiffs' conclusory assertions fail to establish that this action for patent infringement "arises under" that contract. (Indeed, in the Delaware action, plaintiffs they took the position that similar forum selection clauses that appeared in supply contracts into which CDI had entered and which specified Delaware as the forum of choice were *not* binding for jurisdiction. Dkt. 10-2, at 14.) Accordingly, the forum selection clause does not apply.

## III. TRANSFER TO MARYLAND IS APPROPRIATE

28 U.S.C. § 1406(a) provides that

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Plaintiffs do not argue in favor of dismissal or contend that this case could not have been brought in Maryland.

15

ORDER

IT IS ORDERED that, pursuant to 28 U.S.C. § 1406(a), the motion of defendant Lonza Walkersville, Inc. for an order transferring this case to the United States District Court for Maryland is GRANTED.

Entered this 12th day of September, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge